The People of the State of New York, Respondent, *v.* Sheldon Selikoff, Appellant.

Second Department, May 7, 1973.

*Irving Anolik* for appellant.

*Carl A. Vergari, District Attorney* (*Janet Cunard* of counsel), for respondent.

MARTUSCELLO, J.  On May 12, 1972, during the defendant's trial, he moved to withdraw his plea of not guilty and to interpose guilty pleas to grand larceny in the second degree and obscenity in the second degree, under two indictments, in full satisfaction of those two, and two other, indictments.  After some colloquy between the court and the defendant had taken place, wherein the defendant acknowledged his participation in the crime of grand larceny and denied that any promises had been made to him, the court stated that incarceration would not be required of the defendant.  Specifically, this was stated:

"THE COURT:  At this point Mr. West [the assistant district attorney] I would like to place on the record, Sheldon Selikoff, I have had a number of conferences with your attorney and with representatives of the District Attorney's Office with regard to the cases against you.  Based upon the results of the conferences and conversations and the fact and representation made to the court, I indicated to the attorney and I am now indicating to you that in my opinion in the interest of justice that no incarceration of you is required and based upon this plea as to what other sentence I shall impose, I do not know and I make no promises.  Do you understand that?

"SHELDON SELIKOFF:  Yes, sir."

The court indicated that its statement applied as well to the defendant's plea on the obscenity indictment.

At the sentencing on August 16, 1972, the court stated:

"At the time that such pleas were entered, this Court was not aware, nor was it advised, as to the extent of your participation involving the fraudulent scheme which was the basis of the grand larceny in the second degree of indictment No. 997 of 1970 to which you plead guilty.

"This Court, therefore, based upon the information it then had, informed you at the time you pleaded guilty that it did not believe that a sentence calling for your incarceration was required in the interest of justice.

"Subsequent to this expression of this view, however, this Court presided at the trial of the several co-defendants named in the same indictment with you, which trial lasted for some six weeks.  From the evidence adduced on behalf of the People's

case on this trial, it appeared to this Court that your participation in the fraudulent scheme which was the basis of the larceny alleged in this count of the indictment, as well as in the other larcenies alleged in the other indictments, Indictment 998 of 1970 and 999 of 1970, involving thousands of dollars, was not peripheral, subordinate or minor, but rather major and as a principal participant in the fraud.

"In light of these facts and circumstances, the Court feels that at this time that it cannot in good conscience and in the interests of justice keep the promise here to no incarceration.

"Furthermore, it appears from your pre-sentence report filed by the Probation Department that you deny any participation in any fraud by which sums of money were extracted from money lenders.

"Again, in regard to the indictment charging you with sexual impropriety, you, according to the pre-sentence report, deny any guilt in any such acts and claim that you are a victim of some persecution."

Accordingly, the court stated that in view of these circumstances and in the interests of justice, it would allow the defendant to withdraw his pleas of guilty. The court stated:

"Accordingly, Mr. Selikoff, this Court hereby grants you the opportunity to withdraw your pleas as heretofore made as to the two indictments."

Defense counsel refused to have his client withdraw his plea and demanded specific performance of the court's promise of no incarceration, on the authority of *Santobello* v. *New York* (404 U. S. 257). The court stood by its decision and again afforded the defendant the option of withdrawing his guilty plea. The defendant refused and again expressed his desire to plead guilty and enforce the court's promise as to his sentence. The court imposed a maximum five-year sentence on the grand larceny plea and a fine on the obscenity plea.

On this appeal the defendant again argues that he is entitled to specific performance of the court's promise of no incarceration, on the authority of *Santobello* (*supra*).

We affirm the judgment.

Initially, it should be noted that there is no absolute right to have a guilty plea accepted (*Santobello, supra; Lynch* v. *Overholser*, 369 U. S. 705). Moreover, *Santobello* is inapposite to the case at bar. In *Santobello,* negotiations regarding sentence were conducted with the prosecutor. The defendant then withdrew his previous not guilty plea to two felony counts and pleaded guilty to a lesser included offense. The prosecutor agreed

to make no recommendations as to sentence. At sentencing several months later, a new prosecutor recommended the maximum sentence, which the court (which stated it was uninfluenced by that recommendation) imposed. The defendant attempted unsuccessfully to withdraw his guilty plea and his conviction was affirmed in the New York State courts. The Supreme Court of the United States held that the interests of justice and proper recognition of the prosecution's duties in relation to promises made in connection with " plea bargaining " required that the judgment be vacated and that the case be remanded to the State courts for further consideration as to whether the circumstances require only that there be specific performance of the agreement on the plea (in which case the defendant should be resentenced by a different Judge) or that the defendant be given the relief he seeks of withdrawing his guilty plea. On remand by a four to one vote, the Appellate Division, First Department (*People* v. *Santobello,* 39 A D 2d 654, 655) held that " due process and the interests of justice will be fully served by a remand for resentence with the specific performance of the prosecutor's promise. (See, e.g., *People* v. *Keehner,* 28 A D 2d 695, affd. 25 N Y 2d 884; *People* v. *Chadwick,* 33 A D 2d 687.)"

In *Santobello,* the defendant unsuccessfully attempted to withdraw his guilty plea and there was no public policy against specific enforcement of the prosecutor's promise. However, there cannot be an absolute sentence promise by the court at the time of acceptance of a guilty plea, as that would violate a statutory mandate and public policy. Prior to the imposition of sentence the court must order a presentence investigation and may not pronounce sentence prior to receiving a written report of such investigation (CPL 390.20, subd. 1). The presentence investigation " consists of the gathering of information with respect to the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, and the defendant's social history, employment history, family situation, economic status, education, and personal habits " (CPL 390.30, subd. 1). While many, if not most, sentence arrangements by the court at the time of a guilty plea are expressly made conditional upon the findings of the presentence report, it is clear that any such arrangement, no matter how phrased, must be considered contingent until such time as it is confirmed by the court, subsequent to its review of the presentence report, by the formal imposition of sentence. To hold otherwise would frustrate the whole scheme of the statute in providing for the acceptance of lesser pleas and for the impo-

sition of sentences thereon with regard to their deterrent influence, the rehabilitation of the defendant and the protection of the public (Penal Law, § 1.05, subd. 5). If the court has in fact made a specific sentence promise to a defendant at the time of a guilty plea which it cannot thereafter fulfill, it is perfectly fair and proper for the court to offer the defendant the opportunity to withdraw his plea, as was done at bar, and restore him to his prior position (*People* v. *Di Giacomo,* 40 A D 2d 689; see American Bar Association Project on Minimum Standards for Criminal Justice, vol. on Pleas of Guilty, §§ 1.8; 2.1 [a][ii][4]; § 3.3). The Legislature has expressly vested discretion with the court to permit a defendant to withdraw his plea at any time prior to the imposition of sentence and to restore him to his prior position (CPL 220.60, subd. 4).

In the absence of any showing of specific prejudice to the defendant or change in position in reliance upon the guilty plea, and none has been demonstrated in this record, he is in no position to object to this procedure.

Accordingly, the judgment of conviction should be affirmed.

GULOTTA, J. (dissenting). I would reverse the judgment and remand the case to the County Court for specific performance of the sentence promise made by the Trial Judge.

The record incontrovertibly shows an unconditional promise by the Judge that no jail sentence would be imposed. Prior to the acceptance of the guilty plea the court stated, in *haec verba,* " No incarceration of you is required and based upon this plea as to what other sentence I shall impose, I do not know and I make no promises." The " other sentence " necessarily referred to the alternative of a fine or probation.

Subsequently the court imposed a prison term of a maximum of five years and a fine of $1,000.

The court explained its action by indicating that additional information had come to its attention which made it inappropriate for it to keep its promise and offered to allow a withdrawal of the plea, which offer the defendant rejected. No claim is made that the defendant or anyone on his behalf misrepresented any facts which led to the court's promise.

I agree with the basic position we took in *People* v. *Di Giacomo* (40 A D 2d 689) that a promise should be fulfilled or, if the arrangement is to be undone, that the People and the defendant are to be restored to the status obtaining before the plea, citing *People* v. *Rice* (25 N Y 2d 822). (See, also, *Santobello* v. *New York,* 404 U. S. 257.)

However, returning to the *status quo ante* is impossible in this case where codefendants of this defendant have been tried and acquitted in the interim and the defendant himself has waived his constitutional right against self incrimination and has made a full disclosure of his involvement in the crime to the prosecuting authorities and the Probation Department. The record shows that immediately prior to acceptance of the plea and the making of the promise there was a full discussion of the defendant's participation in the crimes charged. The Judge, some four members of the prosecutor's staff, the defendant and his attorney took part in that session. Thus, in reliance upon the court's promise, he at that time and subsequently laid bare all the facts pointing to his culpability. Furthermore, in view of the dilemma in which the court found itself, it would be somewhat unrealistic to suppose that sometime prior to sentence the District Attorney's office was not made aware of whatever additional information the Probation Department had gathered.

We need not fear any wholesale miscarriages of justice by requiring the court to abide by its commitment, since absolute promises, without reservations, such as we are dealing with here, are rare and there is really no need to make them. Faith in the judicial process is more important than seeing that this particular defendant receives a prison term, even though he may deserve it.

There may be some question about the desirability of a Trial Judge taking part in plea discussions and certainly he should not make an unqualified promise as to sentence prior to receipt of a presentence report. The American Bar Association has disapproved of these practices (see American Bar Association Project on Minimum Standards for Criminal Justice, vol. on Pleas of Guilty, § 3.3). It acknowledges, nonetheless, that the practice of judicial participation in plea bargaining is rather widespread (*id.,* commentary on § 3.3[a]). However, in the instant case we are confronted with a *fait accompli* and the question is how to mete out even-handed justice.

On the other side of this coin, i.e., where a defendant has demanded the right to withdraw his plea and the People have insisted on specific performance of the plea bargain, both this court in *People* v. *Chadwick* (33 A D 2d 687) and the First Department in *People* v. *Santobello* (39 A D 2d 654) have required specific performance. In contrast, here we have the defendant demanding specific performance.

The law must be fair and there is little justice in adopting or pursuing a rule which does not apply equally to the People and to the defendant.

HOPKINS, Acting P. J., MUNDER and CHRIST, JJ., concur with MARTUSCELLO, J.; GULOTTA, J., dissents and votes to reverse and remand the case to the County Court for specific performance of the sentence promise by the Trial Judge, with an opinion.

Judgment of the County Court, Westchester County, rendered August 16, 1972, affirmed.

The case is remitted to the County Court, Westchester County, for proceedings to direct defendant to surrender himself to that court in order that execution of the judgment shall be commenced or resumed (CPL 460.50, subd. 5).